## Alcorn *versus* The Commonwealth.

1. A constable in Venango gave bond with surety for the collection of taxes, being in default he moved into another county, the surety afterwards gave notice to the treasurer to sue the constable or he would be held no longer, no suit was brought. *Held*, that the surety was still liable.

2. Whether the surety for a public officer is discharged in any case by neglect to bring suit after notice, not decided.

3. By Act of April 3d 1851, constables in Venango are to collect taxes and give bond for the discharge of their duties under the act and for the payment of the taxes in four months, &c. *Held*, that the limitation in the 4th section of Act of March 29th 1824 (Constables' Sureties) does not apply to the sureties in these bonds.

4. These bonds are under the provisions of the Act of April 4th 1798, limiting suits to seven years from the cause of action.

5. Where a county treasurer in settling with a constable charged him with too little and the county auditors settled with the treasurer on the same basis, this cannot avail the constable in a suit to recover the amount actually due by him.

October 19th 1870.  THOMPSON, C. J., READ, AGNEW, SHARS-WOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Venango county :* No. 177, to October and November Term 1870.

·This was an action of debt by the Commonwealth against B. C. Coolidge and Samuel Alcorn, issued October 8th 1868. Coolidge was not summoned.

The suit was on the official bond of Coolidge, who was constable of Cherry Tree township, Venango county, Alcorn being his surety, and the constable being a defaulter.  The bond was dated August 31st 1865, in the sum of $1000, and was given under the Act of April 3d 1851, Pamph. L. 317, relating to taxes in Venango county.

The act provides that when any state or county tax in that county is unpaid for thirty days, the treasurer shall " issue his warrant under his hand, accompanied by a schedule of all unpaid taxes, and the names of the persons to whom the same are respectively charged in the proper duplicate, directed to the proper constable of the proper township or borough, whose duty it is made to receive and collect the same."   It also provides :—

" That it shall be the duty of the Court of Quarter Sessions in and for said county of Venango, before they shall appoint constables, to require from them a bond, in the name of the Commonwealth, in such sum and with such sureties as shall be approved by the said court, conditioned for the faithful discharge of the duties imposed upon such constables by this act, and for the payment to the proper county treasurer of the full amount of taxes contained in any warrant and schedule which shall be delivered to them, or any of them, by the county treasurer of said

[Alcorn *v.* The Commonwealth.]

county, after deducting exonerations, within four months from and after the date of the delivery of any such warrant as aforesaid."

The act further requires the constables "to settle their accounts, obtain their exonerations and pay over to the treasurer all moneys collected by them in pursuance of the said warrants within four months from and after the delivery of such warrants to them respectively." And "That in case any constable shall fail to make the settlement and payment required by the preceding section of this act within the time aforesaid, it shall be the duty of the treasurer of said county immediately to cause an, action of debt to be brought upon the bond of such constable."

The condition of the bond was that Coolidge should faithfully discharge the duties imposed on him by the foregoing act.

The duplicate placed in the hands of Coolidge amounted in the whole to $7754.75, including state, county and other taxes: the county tax amounted to $6691.24, on which up to September 1st 1865 he had paid $3243.91, leaving a balance of $3448.05 still due, besides smaller sums for other taxes. Henry Dubbs, the treasurer of the county for 1865, made a statement on his books charging the constable with the duplicate, and giving credit in detail for cash, exonerations, &c., and by an erroneous addition stated the balance on the county tax at $2448.05; on the other taxes the balances were properly stated. In the report of the county auditors in January 1866, they stated that $2448.05 was the balance due by Coolidge on the county tax, together with the other balances just as the whole appeared on the treasurer's book. Coolidge afterwards paid all these balances, and it so appeared on the treasurer's book, which was given in evidence. James Allison was county treasurer in 1866.

On the trial, November 2d 1869, Coolidge testified for the defendant that he paid Dubbs, the treasurer, from time to time on his duplicate, and it appearing on a final settlement in April 1866 that he had overpaid, Allison, then treasurer, paid him back $372. Witness removed from Venango county into Crawford county in May 1866.

The defendant testified that in June 1866 he heard that Coolidge was behind; Dubbs was assistant to Allison; defendant went to Allison about it; Allison told him to see Dubbs; he told Dubbs if he did not proceed he would not be holden; told him there was money coming to Coolidge in the neighborhood that could be fastened; Coolidge left no property in Venango county; the debts due him he used to pay the school tax.

Dubbs testified that Allison first gave information of the mistake he had made in Coolidge's account, and he urged the commissioners to bring suit immediately.

The plaintiff's 5th point was :—

"If the jury believe from all the evidence that there are $1000,

[Alcorn *v.* The Commonwealth.]

with interest thereon, due on account of B. C. Coolidge, that no notice of any kind was given by the defendant Alcorn to the treasurer or his clerk, until Coolidge had left the county, that then even if the notice was sufficient, it will not avail the defendant, and the plaintiff is entitled to recover in this case."

The court affirmed this point.

The defendant's points and their answers were :—

"1. The defendant, Alcorn, being the surety of the constable, is entitled to credit in this action for all the money actually paid to the county treasurer by the constable, and this, although the treasurer may have refunded a part thereof under a misapprehension that the constable had overpaid his account."

This was affirmed.

"2. If the jury believe that in the month of April 1866 the books in the county treasurer's office showed the constable's account balanced and settled, that immediately after the defendant Alcorn learned that there was an error or an alleged error in the addition of the credits, to wit, in the month of June 1866, he called on the county treasurer to make inquiry in relation thereto, and was by him referred to Henry Dubbs, Esq., late treasurer, then in the office of, and acting as assistant to said treasurer, and immediately thereafter called on said assistant, and upon learning that there was such error, notified said assistant that unless suit was immediately brought upon the bond he would consider himself discharged, accompanying the notice with information of property and choses in action belonging to said constable, out of which the amount due by said constable could be levied, and the treasurer neglected to bring suit as requested for more than two years, and further believe that the amount claimed in this suit is for county taxes only, the plaintiff is not entitled to recover."

"Answered in the affirmative, in case you also find that at the time of such notice the constable had not left the county of Venango, and had property out of which the money could be made. But if defendant Alcorn gave no notice till after the constable Coolidge had left the county, taking with him all his property except choses in action of small amount, soon afterwards given to the school board, and Coolidge has not since resided in the county, then the notice was too late, and plaintiff may recover."

"3. This suit not having been instituted within three years after the date of the bond, is barred by the Act of 29th March 1824, if the Commonwealth has no interest therein."

"Answered in the negative. If the taxes remaining unpaid are in part due to the Commonwealth, and part to the county of Venango, or all to the county, the statute does not apply."

"4. If the jury believe that the county treasurer was charged in the auditors' report for the year 1865 with all the taxes placed in the hands of constable Coolidge for collection, except the

[Alcorn v. The Commonwealth.]

several sums reported against said Coolidge in the same report, and said report was not appealed from by said treasurer, but was confirmed, and said Coolidge has since, and before the bringing of this suit, paid into the treasury the full amount of said several sums reported against him as aforesaid, the plaintiff is not entitled to recover."

"Answered in the negative."

By the 3d section of the Act of March 29th 1824, 8 Sm. L. 302, Purd. 182, pl. 9, suits against sureties in the bonds required from constables for the faithful discharge of the duties of their officers, are limited to three years from the date of the bond.

The verdict was for the Commonwealth for $978.76.

The defendant took out a writ of error and assigned for error:

1. The answer to the plaintiff's 5th point.

2–4. The answers to the defendant's 2d, 3d and 4th points.

*C. Heydrick*, for plaintiff in error.—A surety may be discharged by laches of a public officer to bring suit on an official bond: Commonwealth v. Wolbert, 6 Binney 292; People v. Jansen, 7 Johns. R. 332; Commonwealth's Appeal, 4 Barr 165; Arnold's Estate, 10 Wright 280. Neglect to bring suit after notice relieved the surety: Cope v. Smith, 8 S. & R. 112; Wetzel v. Sponsler, 6 Harris 463. It is the duty of the commissioners to bring suit as soon as there is default: Cannell v. Crawford Co., 9 P. F. Smith, 202. The limitation of the Act of 1824 was applicable: Commonwealth v. Rose, 9 Casey 199; Foster v. Cumberland Valley Railroad, 11 Harris 371; Glover v. Wilson, 6 Barr 293. The settlement by the county auditors is conclusive: Blackmore v. Allegheny County, 1 P. F. Smith 160.

*C. Hasbrouck* (with whom were *McCalmont & Osborne*).—The public are not to suffer by the neglect of their officers: Wilson v. Glover, 2 Barr 406. The defence for neglect to sue is equitable, and would not avail if the principal were insolvent: Cope v. Smith, *supra*; Gardner v. Ferree, 15 S. & R. 28. The same principle applies when the principal has left the jurisdiction of the court. Only fraud in plaintiff or injury to the surety will release the surety: Gordon v. McCarty, 3 Whart. 407; Huffman v. Hulburt, 13 Wendell 377.

The opinion of the court was delivered, January 3d 1871, by

WILLIAMS, J.—The plaintiff in error was surety in the official bond given by the constable of Cherrytree township, Venango county, under the provisions of the Act of April 3d 1851, Pamph. L. 317, conditioned to pay the treasurer of said county the full amount of taxes contained in any warrant or schedule delivered to him by the said treasurer for collection, after deducting exonerations, within four months after the delivery thereof.

[Alcorn *v.* The Commonwealth.]

The bond is dated August 31st 1865, and this action was brought thereon against the surety on the 8th of October 1868. It was shown on the trial that the constable had failed to pay the full amount of the taxes contained in the duplicate or schedule which was delivered to him for collection, and with which he was charged on the books of the treasurer, after deducting exonerations, and that he removed from Venango to Crawford county, in May 1866, where he has since resided. It was further shown that the surety gave notice to the assistant treasurer, in June 1866, that he would have to look to the constable for the amount for which he was in default, and that if he did not proceed to collect the amount in arrear, he would be holden no longer. No suit was brought against the constable by the treasurer, nor was any action commenced on his official bond until the institution of the present suit against the surety.

The first question presented by the assignments of error in this case is: Was the surety discharged from his liability by the neglect of the treasurer to bring suit against the constable after the notice was given? This question arises on the answers of the court to the plaintiff's 5th and the defendant's 2d point, which constitute the 1st and 2d assignments of error. The court, in answering these points, instructed the jury, in substance, that if they found that at the time the notice was given the constable had not left the county of Venango, and had property out of which the money could be made, the surety was discharged. But if the defendant gave no notice till after the constable had left the county, taking with him all his property except choses in action of small amount, soon afterwards given to the school board, and has not since resided in the county, then the notice was too late, and the plaintiff may recover. The uncontradicted evidence was that the constable had left the county before the notice was given, and we have, therefore, nothing to do with the first instruction contained in the answer. It was as favorable as the defendant had any right to ask, even if the notice had been given before the constable left, and no complaint is made of it. And there is nothing in the second instruction of which the defendant has any reason to complain. If the surety of a public officer is discharged from liability by neglect to bring suit against such officer, after notice by the surety that he will no longer be holden unless suit is brought—a point which does not seem to have been decided by this court—it does not follow that the surety will be discharged if the defaulting officer has removed from the county, where the liability was incurred, before the notice was given. If this were the rule, what would be its extent or limit? Must the public or its agents follow the officer wherever he is to be found, and bring suit against him, in order to hold the surety liable for his default after such notice? This would be an unreasonable requirement,

[Alcorn v. The Commonwealth.]

and it seems to me that no such duty can be implied from the nature of the contract, or inferred from the relation of the parties. The utmost that the surety can reasonably require is, that the public or its agents shall bring suit against the defaulting officer if he is within the jurisdiction of the court where the liability was incurred. But whether they are bound to do this is a question which we need not determine, as it does not properly arise in this case.

The next question presented by the record is, whether the suit is barred by the 4th section of the Act of 29th March 1824, limiting the time for the commencement of actions against sureties in constable's bonds to three years after their date.

The court instructed the jury that the action was not barred, and this was clearly right. The bond upon which this suit was brought is not the ordinary bond given by a constable for the just and faithful discharge of the duties of his office, but a bond given under the special provisions of the Act of April 3d 1851, imposing upon constables in the county of Venango the duty of collecting state and county taxes in their respective townships, conditioned for the faithful discharge of the duties imposed upon them by the act, and for the payment to the treasurer of the county of the amount of taxes contained in the warrant or schedule delivered to them. It is clear that such a bond does not come within the provisions of the Act of 1824, but is embraced in the general provisions of the Act of 1798, and therefore the suit is not barred because it was not commenced within three years after the date of the bond.

The only remaining question is that which is presented by the 4th and last assignment—and there was not a particle of evidence upon which to raise the question presented by this assignment— and if there had been, it could not have availed the defendant. However conclusive upon the treasurer the settlement of his accounts by the auditors may have been, if unappealed from, it is clear that the settlement could have no effect upon the constable's liability for the taxes, one way or the other, though the treasurer may have been charged by the auditors with all the taxes placed in his hands, except the sums reported against him—for the very plain reason that it was not a settlement of the constable's account.

As we discover no error in the instructions given by the court to the jury, and as none others are alleged, the judgment must be affirmed.                                    Judgment affirmed.