## Commonwealth, to use, *v.* Kauffman (et al., Appellant).

Argued January 22, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Edmund C. Wingerd,* for appellant.

*Edwin D. Strite,* with him *Paul M. Crider,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 19, 1934:

The County of Franklin brought an action in assumpsit against David Kauffman, a former tax collector of Washington Township, that county, and the Maryland Casualty Co., surety on the bond filed by Kauffman, as

such collector for the tax year 1928, in the penal sum of $20,000. Plaintiff claimed the sum of $7,527.96, with interest, as the amount owing on the 1928 duplicate for county taxes. Kauffman admits in his affidavit of defense that the tax duplicate for 1928 was properly delivered to him and that he did not collect and pay over or account for the whole amount charged against him on this duplicate, but both defendants deny that the amount due and owing thereon was ever properly ascertained according to law and they aver that such ascertainment was a prerequisite to the establishment of liability against them or either of them.

After two affidavits raising questions of law had been disposed of, affidavits of defense to the merits were filed and the case was tried before a jury. A verdict was rendered under binding instructions in favor of the plaintiff in the sum of $8,492.69, inclusive of interest. The casualty company (the defendant's surety) entered rules for judgment n. o. v. and for a new trial. Both rules were discharged. The surety appealed.

Appellant's first proposition is that a suit by a county upon the official bond of a tax collector against him and his surety is premature when there has been no settlement by the county auditors of the tax collector's liability to the county for the amount claimed. Appellant contends that the proper tribunal to ascertain the amount due the county by a township tax collector is the county auditors. Appellant cites sections 363 and 378 of the Act of May 2, 1929, P. L. 1278, 16 P. S., pages 109 and 116, in support of its contention or at least as the basis of its argument. These sections read, respectively, as follows:

"Section 363. Audit of Accounts.—The auditors shall audit, settle, and adjust the accounts of the commissioners, treasurer and sheriff and coroner of the county, and make report thereof annually to the court of common pleas of such county, together with a statement of the balance due from or to such commissioners, treasurer,

sheriff, or coroner." This is in substance a reënactment of section 48 of the Act of April 15, 1834, P. L. 537, 1 Purdon's Digest (13th ed.), page 861, section 10.

"Section 378. Filing Report.—The report of the controller or auditors shall be filed among the records of the court of common pleas of the county, and, from the time of such filing, shall have the effect of a judgment against the real estate of the officer who shall thereby appear to be indebted either to the Commonwealth or to the county." This is in substance a reënactment of section 55 of the Act of 1834, supra.

It will be observed that the only officials referred to in the sections quoted are the commissioners, treasurer, sheriff and coroner. There is nothing in the act requiring that a tax collector's liability to the county be determined by the county auditor.

It is the Act of June 25, 1885, P. L. 187, section 11, which provides for the settlements to be made by tax collectors with the proper authorities. Section 11 of that act reads as follows: "The accounts of collectors of taxes shall be settled by township or borough auditors of the proper township or borough, and he shall state a separate account for each different tax collected by him; but collectors of county and state taxes shall settle with the county commissioners as heretofore."

As to this, President Judge DAVISON of the court below aptly says: "This designates the tribunal with which settlement is to be made, not the manner in which it is to be made with that tribunal. ...... We find nothing in any law in our search which attempts to lay down a rule setting forth the manner in which such settlement is to be made." The Act of June 25, 1885, changed the method of settling *township* and *borough* taxes, but expressly provided that "collectors of *county* and *state* taxes shall settle with the county commissioners as heretofore." We agree with the court below "that the law provides for a settlement of the duplicate by the tax collector with the county commissioners and a granting of

certain exonerations by that board, which determines the amount which the tax collector must subsequently account for and pay over, and that this amount having been so ascertained is a fixed sum ascertained by the tribunal raised by law for that purpose and for which suit will lie."

Appellant also calls attention to the Act of June 8, 1891, P. L. 212, section 1, 72 P. S., page 402, section 5521, which provides that "when any state, county and poor taxes are placed in the hands of a collector for collection in accordance with any existing law,......the amount of the same shall be credited to the treasurer of the county, if previously charged to said treasurer, and charged to the collector; and such collectors shall give bond to the county, with sureties," etc.

The argument appears to be that the treasurer's records must constitute the only proof of what collectors of county taxes owe the county. We cannot so construe this act. In Alcorn v. Com., 66 Pa. 172, a constable who had given bond, with surety, for the collection of taxes, was in default and had moved into another county. In a suit against the constable-collector and his surety, it was held, inter alia, that where a county treasurer in settling with a constable-collector charged him with too little, and the county auditors settled with the treasurer on the same basis, this could not avail the constable-collector in a suit to recover the amount *actually due* by him. This court said that the settlement of the treasurer's accounts by the auditors, had "no effect upon the constable's liability for the taxes, one way or the other......it was not a settlement of the constable's account." We find no statutory provision so limiting the evidence of the liability of a collector of county taxes and we would not be justified in construing any existing law of this Commonwealth as prescribing that the audit of the county treasurer's books by the county auditors was either a prerequisite to the establishment of the liability of a collector of county taxes, to the county, or

that the treasurer's books furnished the only conclusive evidence of that liability.

Appellant in combating the ruling that the county commissioners have the power to act as auditors so far as the accounts of collectors of county taxes are concerned, says: "It would be strange if the accounts of all tax collectors and all borough, county, township and school officials are audited, the audits filed in the proper court and the right of appeal given to the persons affected, with the exception of tax collectors, in so far as county taxes are concerned. Such a condition would be an anomaly, and we cannot feel that the legislature intended such a condition." The mere fact that the results of the craftsmanship of the legislature may sometimes seem "strange" and "anomalous" to able lawyers is not a sufficient warrant for the extension of the judicial hand into the legislative craft.

It is next contended that the county cannot recover from the surety in this case because the commissioners did not file a certificate of the amount due on the tax duplicate in the office of the prothonotary of the court of common pleas.

Section 3 of the Act of February 28, 1835, P. L. 45, which reads as follows, is cited by appellant: "It shall be the duty of the commissioners, within three months from the delivery of the duplicate to the collector, appointed in pursuance of the provisions of this act, to file a certificate under their hands and seal, in the office of the prothonotary of the court of common pleas of the county, stating the amount due and unpaid by such collector; and it shall be the duty of the prothonotary to enter the same on his docket, which certificate shall, from such entry, have the same operation and effect as a judgment of said court, and executions may be issued in like manner as on judgments for the amount remaining unpaid at any time after the entry aforesaid."

The Act of April 15, 1834, P. L. 509, provides in section 17, in substance, that every assessor must on or be-

fore the day of appeals in every year return the names of two respectable citizens of his ward, township, or district, to the commissioners, one of whom so returned shall be appointed by such commissioners as the collector of county rates and levies for such ward, township or district if he shall give security as the act provides. Section 18 of this act provides, in substance, for the appointment by the commissioners of a collector if any assessor fails to return the names of two citizens. Section 19 provides that "no person shall be appointed collector of county rates and levies, unless he shall give bond in such amount as shall be determined by the commissioners with warrant of attorney to confess judgment thereon, and with such surety or sureties therein as shall be satisfactory to the commissioners, or a bond with a mortgage of real estate sufficient to secure such amount." Section 43 provides that "the condition of the bond to be given by the several collectors......shall be that such collector shall well and truly collect and pay over or account for according to law the whole amount of the taxes charged and assessed in the duplicate delivered to such collector." Section 48 provides for abatements and exonerations by the commissioners. Section 49 provides that "every collector shall, within three months after receiving the corrected duplicate, pay into the hands of the treasurer of the proper county or township, as the case may be, the whole amount of the taxes charged and assessed in such duplicate, excepting such sums as the commissioners or supervisors and overseers, as the case may be, in their discretion, may exonerate him from, on pain of being answerable for and charged with the whole balance so remaining unpaid."

In 1835 the legislature provided for the appointment of tax collectors under certain circumstances without requiring them to file the security required in the earlier act. The Act of February 28, 1835, P. L. 45, section 1, provides "that the commissioners of the several counties shall have power to appoint collectors of taxes without

requiring the bond or mortgage, or other security, directed by the nineteenth section of the act relating to county rates and levies, and township rates and levies: Provided, That the person so appointed shall own a freehold estate, which, in the opinion of said commissioners, shall be a sufficient security for the faithful performance of his duties as collector."

The court below correctly held that the third section of this act, supra, applied only "where a duplicate was delivered to a tax collector in pursuance of the provisions of this act, that is when a duplicate had been delivered to a tax collector appointed by the commissioners by the authority of this act, without the bond and mortgage or other security required by the former act." Since this section has no application where a tax collector has given security as required by the law, the surety here has no standing to invoke the provisions it relies on. The court below pertinently says: "In the case before us a bond has been entered with the defendant company as surety, and it cannot escape its liability under the terms of any act of assembly which applied to a wholly different state of affairs. We must consider the present question as if the Act of 1835 did not exist, for its terms cannot in any way affect the question before us."

The only remaining question raised by the appellant is whether or not the surety was released by the county commissioners by refusing to accept the sum of $750 offered by the tax collector to the county treasurer after the suit was brought. L. H. Leiter, one of the Franklin County Commissioners, when under cross-examination, admitted that David E. Kauffman had offered a check to the county treasurer for $750, and receipt of it was refused. When he was asked: "Why did you refuse to receive it?" he replied: "Because we had already entered suit against the Maryland Casualty Company." A little later he said: "That's the real reason. We were holding the Maryland Casualty Company for it."

We think in view of this unequivocal admission by one of the county commissioners, the judgment should be reduced by $750, with interest on the same from March 21, 1930, to May 10, 1932, totaling $846.13. Deducting this from the judgment rendered of $8,492.69, leaves $7,646.56. To this latter sum the judgment must be reduced. As so modified, the judgment is affirmed.